IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02426-CMA-CBS

EDDIE DEAN FLUKER
        Plaintiff,
v.

FEDERAL BUREAU OF PRISONS,
NEWTON E. KENDIG,
R. BAUER,
STEVEN NAFZIGER, and
RONNIE WILEY,
        Defendants.
_____

RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Shaffer

        This civil action comes before the court on: (1) Defendants' Motion for Summary

Judgment (filed December 7, 2009) (doc. # 98); (2) "Plaintiff Fluker['s] Motion to Provide

the Court with Amendments to Deposition" (filed December 21, 2009) (doc. # 101);  and

(3) Mr. Fluker's "Unopposed Motion for the Court Assistance to Investigate the

Defendant Federal Bureau of Prison[s'] Employees for Altering Documents in a Official

Proceedings Pursuant to Title 18 U.S.C. § 1512 Alter Documents in a Official

Proceeding (c) and D.C. Colo. L. Civ. R. 7.1 Motion (A) [sic]" (filed December 28, 2009)

(doc. # 103).  Pursuant to the Amended Order of Reference dated January 14, 2008

(doc. # 10) and the memoranda dated December 8, 2009 (doc. # 99), December 29,

2009 (doc. # 104), and December 30, 2009 (doc. # 105), these matters were referred to

the Magistrate Judge.  The court has reviewed the Motions, Mr. Fluker's objection

("Response") (filed December 28, 2009) (doc. # 102), the evidence before the court,

and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Fluker is a prisoner in the custody of the Federal Bureau of Prisons (BOP) at the United States Penitentiary in Florence, Colorado ("USP-Florence").  Proceeding in his *pro se* capacity, Mr. Fluker initiated this action on November 19, 2007 by filing a Complaint seeking injunctive relief and asserting claims against the BOP and two private physicians, Dr. Vikas V. Patel and Dr. Patrick Devanny.  (*See* doc. # 2).  Mr. Fluker's Claim One alleged that the named Defendants had violated his Eighth Amendment rights by denying reconstructive surgery for his ruptured biceps tendon. Mr. Fluker's Claim Two asserted that the BOP is not following established procedures regarding grievances, is serving him food that is nutritionally inadequate and laced with drugs and other substances that make him sick, and that he has been denied tests to determine the cause of his sickness.

On December 14, 2007, Senior Judge Weinshienk issued an Order to Dismiss the claims against Drs. Patel and Devanny as "legally frivolous."  (*See* Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (doc. # 6)). Judge Weinshienk noted that Mr. Fluker was alleging that Dr. Patel had "recommended against reconstructive surgery of Mr. Fluker's biceps tendon," while Dr. Devanny had apparently concluded that "reconstructive surgery would relieve Mr. Fluker's pain." Judge Weinshienk held that "because Mr. Fluker does not request any relief from the individual doctors named as Defendants, the claims against the doctors will be dismissed as legally frivolous and they will be dismissed as parties to this action."  (*See*

*id.*).  Judge Weinshienk declined to address the merits of the claims against the BOP and directed that the action be drawn to a district judge and magistrate judge.  (*See id.*).

On April 15, 2008, the court accepted for filing Mr. Fluker's Amended Prisoner Complaint (doc. # 28).  The Amended Complaint sought injunctive relief against the BOP and asserted two claims for relief.  Claim One alleged that the BOP, through various employees, had violated the Eighth Amendment and various federal statutes by continuing to deny Mr. Fluker's request for evaluation and surgical care by "licensed orthopedic surgeons who specialize in hand and upper extremity surgery and ruptured bicep (sic) tendon surgery in Colorado pursuant to Title 18 U.S.C. 4042 Duties of Bureau of Prisons."  (*See* doc. # 28 at p. 10 of 110, ¶ 5).  Mr. Fluker's Claim Two alleged that the BOP had violated its administrative grievance procedures by improperly denying his request "for review by other federal agencies concerning kitchen employee reprisal and officer reprisal who continue to intentionally serve Plaintiff Fluker spoil [sic] nutritionally inadequate foods and foods that are being laced with drugs and other substances."  (*See* doc. # 28 at p. 12 of 110, ¶ 8).  Claim Two also asserted that the BOP was improperly denying his request "to receive Hylexin and Milexin MD, medical cream to lighten dark circles under my eyes pursuant to Title 18 U.S.C. 4042 Duties of Bureau of Prisons."  (*See id.* at p. 13 of 110, ¶ 10).  The Amended Complaint sought only injunctive relief.

On May 14, 2008, the BOP filed a Motion to Dismiss the Amended Complaint. (*See* doc. # 48).  The BOP argued that Mr. Fluker's claims for injunctive relief were barred because the Amended Complaint failed to specifically identify any statute that waives the government's sovereign immunity.  The BOP's Motion failed to cite or note

the Tenth Circuit Court of Appeals decision in *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1238-39 (10th Cir. 2005), which held that sovereign immunity does not bar an inmate from suing the BOP for injunctive relief under the Eighth Amendment because the BOP is an agency within the meaning of the Administrative Procedures Act, 5 U.S.C. § 551(1) and § 702. Mr. Fluker filed his response to the Motion to Dismiss on June 9, 2008. (*See* doc. # 52). Although Mr. Fluker did not cite *Simmat*, he noted that the Amended Complaint alleged jurisdiction under 5 U.S.C. § 702. (*See* doc. # 52 at pp. 4, 5 of 6; doc. # 28 at pp. 28, 39, 42 of 110).

On June 9, 2008, Mr. Fluker filed his "Motion for Leave to Amend Prisoner's Complaint Pursuant to Federal Rule Civil Procedure Rule 15(A) and Pursuant to Federal Rule Civil Procedure Rule 12 [sic]" (doc. # 53), along with a proposed 48-page Second Amended Complaint (doc. # 53-2). The proposed Second Amended Complaint would have dropped the BOP as a named party, added 12 individuals and the City of Florence, Colorado's South Water Treatment Plant as named Defendants, and asserted three claims for relief. (*See* doc. # 53-2).

During a status conference on March 10, 2009, the court raised perceived deficiencies in the BOP's Motion to Dismiss and Mr. Fluker's Motion to Amend. (*See* Courtroom Minutes/Minute Order (doc. # 60)). The court then granted defense counsel's oral motion to withdraw without prejudice the BOP's Motion to Dismiss and Mr. Fluker's oral motion to withdraw his Motion to Amend. (*See* Courtroom Minutes/Minute Order (doc. # 60)). The court granted Mr. Fluker leave to file a new motion for leave to amend on or before March 27, 2009. (*See id.*). On April 21, 2009, the court accepted for filing Mr. Fluker's Second Amended Complaint. (*See* "Order

4

Regarding Plaintiff's Motion for Leave to Amend" (doc. # 64); Second Amended Complaint ("SAC") (doc. # 65)).

The SAC includes two claims for relief and seeks only injunctive relief. (*See id.* at pp. 8, 43-44 of 61). Claim One alleges that the BOP, various BOP employees in their official capacities, and Dr. Vikas V. Patel, a private physician with The Spine Center of Denver, Colorado, violated the Eighth Amendment by continuing to deny Mr. Fluker's request to be scheduled for evaluation and surgery by a Colorado orthopedic surgeon specializing in hand and upper extremity surgery and ruptured biceps tendon surgery. (*See* doc. # 65 at pp. 4, 11 of 61).[1] Mr. Fluker seeks injunctive and mandamus relief in the form of "a court order to be schedule [sic] for examination and surgery [b]y a license[d] orthopedic surgeon at Hand Surgery Associates in Colorado who specialize[s] in acute and chronic bicep tendon rupture." (*See* doc. # 65 at p. 8 of 61, ¶ 1).

Claim Two alleges that the BOP has violated its administrative grievance procedures by improperly denying his "request for review by other federal agencies . . . concerning kitchen employees reprisal and officer reprisal who continue to intentionally serve Plaintiff Fluker, spoil [sic] nutritionally inadequate foods and foods that are being laced with drugs and other substances." (*See* doc. # 65 at p. 12 of 61, ¶ 8). Claim Two also alleges that the BOP was improperly denying his "request to receive Hylexin and Milexin MD medical creams to lighten dark circles under my eyes pursuant to Title 18 U.S.C. 4042 Duties of Bureau of Prisons (A)(2)." (*See id.* at p. 13 of 61, ¶ 10).

---

[1]        On March 17, 2010, District Judge Arguello entered an Order dismissing Defendant Patel from this civil action with prejudice. (*See* "Order Adopting and Affirming February 16, 2010 Recommendation of United States Magistrate Judge" (doc. # 109)).

Defendants move for summary judgment on both of the claims in the SAC.


II.     Mr. Fluker's "Motion to Provide the Court with Amendments to Deposition"

        Mr. Fluker has submitted amendments to 237 lines on 55 pages of his 63-page

deposition.  (*See* doc. # 101*).*  Mr. Fluker asserts that "[t]he deposition transcripts that

plaintiff Fluker read didn't state correctly what I said during my deposition" and that he

"was not allowed to send the court a copy of the deposition transcripts that I read." (*See*

doc. # 101 at p. 1 of 17).  "I was told I couldn't have a copy to send the court." (*See id.*).

        The Federal Rules of Civil Procedure provide:

>       On request by the deponent or a party before the deposition is completed,
>       the deponent must be allowed 30 days after being notified by the officer
>       that the transcript or recording is available in which:
>       (A) to review the transcript or recording; and
>       (B) if there are changes in form or substance, to sign a statement listing
>       the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).  "[T]here is no provision to enable a deponent to conduct a

wholesale re-draft of deposition answers at a later date."  *Sportsmans Warehouse, Inc.*

*v. Fair*, 2008 WL 2668300 *2 (D. Colo. 2008).[2]  *See also Rios v. Welch*, 856 F. Supp.

1499, 1502 (D. Kan. 1994) (ruling that a party is not permitted to "virtually rewrite"

deposition responses simply by invoking the benefits of Fed. R. Civ. P. 30(e)).  Nor

does Mr. Fluker offer any specific reasons for each line of the deposition that he

proposes to amend.  (*See id.* at pp. 4-16 of 17).  However, Defendants have not filed

any objection to Mr. Fluker's Motion and the court's review of Mr. Fluker's amendments

---

        [2]     Copies of unpublished decisions cited are attached to this
Recommendation.

reveals no material alteration of his testimony.  The court will therefore grant Mr.

Fluker's Motion.


III.    Defendants' Motion for Summary Judgment

A.      Standard of Review

Summary judgment is warranted under Federal Rule of Civil
Procedure 56(c) when the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as
to any material fact and that the movant is entitled to judgment as a matter
of law. A disputed fact is material if under the relevant substantive law it is
essential to proper disposition of the claim. An issue is genuine if the
evidence is such that it might lead a reasonable jury to return a verdict for
the nonmoving party. When reviewing a motion for summary judgment, a
court must view the evidence in the light most favorable to the non-moving
party.
Furthermore, the Court must construe the filings of a pro se litigant
liberally. For example, the Court may treat a pro se litigant's complaint as
an affidavit if it alleges facts based on personal knowledge and has been
sworn under penalty of perjury. This rule applies here because Plaintiff
submitted a verified complaint, pursuant to 28 U.S.C. § 1746. However,
the Court should not be the pro se litigant's advocate, nor should the Court
supply additional factual allegations to round out [the pro se litigant's]
complaint or construct a legal theory on [his or her] behalf. In addition, pro
se litigants must follow the same procedural rules that govern other
litigants.

*Frazier v. Ortiz*, 2010 WL 924254 at * 2 (D. Colo. March 10, 2010) (internal quotation

marks and citations omitted).


B.      Analysis

Mr. Fluker is suing the BOP and several of its employees in their official

capacities.  An action against the individual Defendants in their official capacities as

agents of the United States is in fact an action against the United States.  *Weaver v.*

*United States*, 98 F.3d 518, 520 (10th Cir. 1996). While the United States has

sovereign immunity from money damages, equitable relief is available against the

United States in the nature of injunctive relief pursuant to the Administrative Procedure

Act ("APA"), 5 U.S.C. § 702, and/or mandamus pursuant to the Mandamus Act, 28

U.S.C. § 1361. *See Simmat*, 413 F.3d at 1231, 1236. If equitable relief rather than

damages is sought from a federal official, it must be obtained against him in his official

capacity through a claim in the nature of injunction or mandamus. *Simmat*, 413 F. 3d at

1231.[3] The SAC seeks only injunctive and/or mandamus relief. (*See id.* at pp. 8, 43-44

of 61).


1.    Claim One

       The First Claim alleges that the BOP and several of its employees in their official

capacities violated the Eighth Amendment by continuing to deny Mr. Fluker's request to

---

[3]       While Mr. Fluker lists numerous statutory and other citations in his
amended complaint, purporting to establish a legal basis for his claims, *see, e.g.*, doc. #
65 at pp. 3-5 of 61, the only permissible avenue of relief in the face of the United States'
sovereign immunity exists pursuant to the Administrative Procedure Act, 5 U.S.C. §702,
or the Mandamus Act, 28 U.S.C. § 1361. Otherwise, "[t]he United States, as sovereign,
is immune from suit unless it waives its sovereign immunity and consents to be sued."
*Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006) (citation omitted). An
agency of the United States shares that immunity. *See Murphy v. I.R.S.*, 493 F.3d 170,
174 (D.C. Cir. 2007) (citation omitted).
       Nor do Mr. Fluker's alternative legal theories support a private cause of action
against Defendants. Title 18 U.S.C. § 242 is a criminal statute that cannot be enforced
through a civil lawsuit. *Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991)
("private citizens generally have no standing to institute criminal proceedings"). Title 18
U.S.C. § 4042 and BOP Program Statements do not provide a private right of action.
*See Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996) (§ 4042 "does not create a
private right of action"); *Miller v. Henman*, 804 F.2d 421, 426 (7th Cir. 1986) (BOP
policy manual containing Program Statements "does not create legally enforceable
entitlements.").

be scheduled for evaluation and surgery by a Colorado orthopedic surgeon specializing in hand and upper extremity surgery and ruptured biceps tendon surgery. (*See* doc. # 65 at p. 11 of 61, ¶ 5). Mr. Fluker seeks injunctive and mandamus relief in the form of "a court order to be schedule [sic] for examination and surgery [b]y a license[d] orthopedic surgeon at Hand Surgery Associates in Colorado who specialize[s] in acute and chronic bicep tendon rupture." (*See* doc. # 65 at p. 8 of 61, ¶ 1). (*See also* Deposition of Eddie Fluker, Exhibit 1 to Motion for Summary Judgment (doc. # 98-1) at pp. 5-6, 46-47) (Plaintiff seeks as relief in this lawsuit "to be seen by a doctor who specializes in acute and chronic biceps tendon reconstruction surgery, and have another reevaluation and be scheduled for surgery."); *see also* Affidavit of Plaintiff Eddie Fluker Claim One (doc. # 103-1) at p. 2 of 4 (Defendants "refuse to find orthopaedic surgeon who specializes in old chronic bicep tendon rupture reconstructive surgery" (emphasis in original)).[4]

---

[4] This is Mr. Fluker's second federal lawsuit concerning his biceps tendon. On May 1, 2000, Mr. Fluker filed *Fluker v. Kowalski, et al*., Civil Action No. 00-D-173 (D. Colo.) in which he alleged that various doctors had violated his Eighth Amendment rights through their deliberate indifference to medical needs related to his ruptured biceps tendon. Four of the Defendants named in *Fluker v. Kowalski* had contact with Mr. Fluker while he was in custody at the United States Medical Center for Federal Prisoners at Springfield, Missouri in 1998. In an Order dated March 6, 2001, District Judge Daniel affirmed the Recommendation of Magistrate Judge Watanabe and dismissed the claims against four Defendants after concluding they lacked sufficient minimal contacts with this forum state to support a finding of personal jurisdiction. As for the claim against Dr. Kowalski, who allegedly refused and then delayed Mr. Fluker's medical treatment while at ADX, Magistrate Judge Watanabe concluded that

> [a]t most, the plaintiff has alleged that defendant Kowalski and the medical staff at the ADX failed to diagnose and treat plaintiff's medical condition properly. . . . A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

In order to assert an Eighth Amendment claim that the BOP and several of its employees in their official capacities were deliberately indifferent to his medical needs, Mr. Fluker must demonstrate that (1) he suffered objectively serious medical needs and (2) Defendants actually knew of but deliberately disregarded those needs. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (internal quotation marks and citation omitted). A medical need or condition is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 1496. "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany*, 132 F.3d at 1239 (citation omitted).

A prisoner may prevail on an Eighth Amendment claim arising out of inadequate medical treatment only if he can show that the BOP was deliberately indifferent to his objectively serious medical condition. *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir.2002). An Eighth Amendment claim is not stated "if a prisoner's complaint is

District Judge Daniel dismissed all of Mr. Fluker's claims in Civil Action No. 00-D-173 with prejudice.

directed at the wisdom or quality of the medical care he received in prison, even if that treatment is so negligent as to amount of medical malpractice." *Brinton v. Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983). *See also Daniels v. Williams*, 474 U.S. 327, 333, 106 S. Ct. 662, 666 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution"), *abrogated on other grounds*, 490 U.S. 386 (1989); *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment") (internal quotation marks and citation omitted); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain); *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir.1990) (more than mere negligence required for constitutional deprivation in civil rights action). A "prisoner's right is to medical care not to the type or scope of medical care which he personally desires." *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation marks and citation omitted). The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux,* 961 F.2d at 1537 (citations omitted).

Mr. Fluker has been incarcerated at the United States Penitentiary, Florence, Colorado ("USP-Florence") since April 14, 2009. (*See* Deposition of Eddie Fluker, Exhibit 1 to Motion for Summary Judgment (doc. # 98-1) at p. 47). Prior to April 14, 2009, Mr. Fluker was incarcerated at the Administrative Maximum facility in Florence, Colorado ("ADX"). (*See* doc. # 21 at p. 2). Mr. Fluker suffers from a ruptured left biceps tendon. (*See* doc. # 98-1 at pp. 12 -13). His injury occurred at the ADX on April 1,

1998.  (*See* doc. # 98-1 at p. 12;  Injury Assessment and Followup form, Attachment 1 to Declaration of David K. Allred, D.O., Exhibit 2 to Motion Summary Judgment (doc. # 98-2) at p. 16 of 134).

Mr. Fluker's injury was examined by a physician's assistant on April 2, 1998. (*See* doc. # 98-1 at p. 13).  On April 29, 1998, x-rays were ordered for left arm pain. *See* Chronological Record of Medical Care/Progress Notes, Attachment 2 to Declaration of David K. Allred, D.O., Exhibit 2 to Motion Summary Judgment (doc. # 98-2) at p. 19 of 134).  A July 17, 1998 examination of Mr. Fluker's left arm showed that he has "deformity at biceps muscle, biceps tendon distally not palpable.  Limited flexion, specially against resistance."  (*See* doc. # 98-2 at p. 20 of 134).

Mr. Fluker had an orthopedic consultation at the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield") on September 14, 1998.  (*See* Orthopedic Surgery Consultation,  Attachment 5 to Exhibit 2 to Motion for Summary Judgment (doc. # 98-2) at pp. 89-90 of 134).  The orthopedic surgeon noted that "[i]t has been nearly six months from the time of injury.  Repair at this late date would be problematic and would be associated with increased morbidity and problems."  (*See* *id.*).  Regarding another examination on September 18, 1998, at MCFP Springfield, the orthopedic surgeon noted

> "[s]ince this is an old injury, the possibility of attaining a satisfactory repair at this time is more likely unacceptable as far as it being more risk than beneficial. The attempt of repair may be unsuccessful because the muscle has possibly scarred in this new contracted position. The amount of benefit expected is very minimal if any. This was explained to the patient who indicated he understood.

(*See* History and Physical, Attachment 6 to Exhibit 2 to Motion for Summary Judgment

(doc. # 98-2) at p. 95 of 134). Mr. Fluker had another orthopedic surgery consultation at MCFP Springfield on October 9, 1998. (*See* Orthopedic Surgery Consultation, Attachment 7 to Exhibit 2 to Motion for Summary Judgment (doc. # 98-2) at pp. 97-98 of 134). The orthopedic surgeon noted numerous risks of surgery to attempt to repair the tendon. (*See id.*; *see also* doc. # 98-1 at p. 38).

Mr. Fluker was scheduled for surgery on his left biceps on October 14, 1998, at MCFP Springfield, but he declined the surgery in order to get another medical opinion. (*See* doc. # 98-1 at pp. 31-33; doc. # 98-2 at pp. 4-5 of 134, ¶¶ 14-15, pp. 100, 102 of 134). Mr. Fluker was examined at ADX for various complaints, including shoulder pain, on January 11, 1999, January 20, 1999, January 24, 1999, January 25, 1999, January 26, 1999, March 29, 1999, and April 2, 1999. (*See* doc. # 98-2 at pp. 5-6 of 134, ¶¶ 16-18; pp. 34-41 of 134). Mr. Fluker was returned to MCFP Springfield in April 1999 for further consultation regarding surgical repair of his left biceps tendon.

On April 12, 1999, Dr. Harris at MCFP Springfield noted

[H]e has regained full functional use of the extremity, but complains of discomfort in the region of the his [sic] biceps and shoulder.

. . . He has full range of motion of the left shoulder, left elbow, and normal pronation and supination. . .

At this point because of the chronicity and the regain of a normal function of the extremity, I do not feel that attempt at repair of the biceps is indicated and such an attempt might result in impaired function and even increase symptoms in the extremity.

(*See* Othopedic Surgery Consultation, Attachment 12 to Exhibit 2 to Motion for Summary Judgment (doc. # 98-2) at p. 110 of 134). Mr. Fluker was informed "in great detail . . . that the ruptured muscle fibers have long retracted and scarred

down/atrophied by now; That there is no reasonable likel[i]hood that any corrective repair would be worthwhile or would be harmless; He may have [a] high risk of complications [and] very high chance of unfavorable complications; and no orthope[dic surgeon] willing to do this." (*See* doc. # 98-2 at p. 43 of 134). In sum, examination of Mr. Fluker revealed the surgical repair prognosis was unchanged and no surgery was indicated. (*See* doc. # 98-2 at p. 6 of 134, ¶¶ 21-25; pp. 42-45 of 134; p. 115 of 134 (History and Physical dated April 13, 1999 noting "there is full range of motion with normal strength"); pp. 117-20 (Transfer Summary dated April 26, 1999, noting that Mr. Fluker "was provided with a lengthy and detailed explanation of why surgical repair of the ruptured distal biceps tendon was not surgically indicated at this time" and was discharged and transferred back to ADX with no specific treatment program recommended)).

Mr. Fluker was examined at ADX for complaints of shoulder pain on June 10, 1999, August 14, 2001, October 5, 2001, December 7, 2001, and December 18, 2001. Mr. Fluker had full range of motion with normal strength and was either prescribed medication for his pain or declined pain medication. (*See* doc. # 98-2 at p. 8 of 134, ¶¶ 26-28; pp. 47, 51, 53, 55-57 of 134). The results of x-rays ordered on October 5, 2001 of Mr. Fluker's shoulder were negative, or normal. (*See* Radiologic Consultation Request/Report dated October 17, 2001, Attachment 15 to Exhibit 2 to Motion for Summary Judgment (doc. # 98-2) at p. 122 of 134; see also p. 8 of 134 at ¶ 27).

At Chronic Care Clinics on December 18, 2003 and February 24, 2004, Mr. Fluker noted pain in the left shoulder, particularly upon doing pushups. While atrophy of the left biceps was noted, he had full range of motion and the arm was otherwise

14

normal.  (*See* doc. # 98-2 at p. 8-9 of 134, ¶¶ 29-30;  pp. 62-65 of 134).  Mr. Fluker was instructed to maintain a healthy lifestyle, to engage in a regular exercise program, to keep good hydration, and to avoid extreme exercise such as pushups and pull-ups that cause left shoulder pain.  (*See* doc. # 98-2 at pp. 63, 65 of 134).

At a Chronic Care Clinic on June 9, 2004, Mr. Fluker complained of pain in his left arm.  (*See* doc. # 98-2 at p. 66 of 134).  A tele-ortho (video-teleconferencing) consultation was held to contemplate "having a surgical repair of his ruptured biceps tendon."  (*See* doc. # 98-2 at pp. 67, 124 of 134).  Mr. Fluker's request for surgical repair was not approved.  (*See id.*).

Mr. Fluker was examined at ADX for complaints of shoulder pain on July 12, 2004.  (*See* doc. # 98-2 at pp. 69-70 of 134).  It was noted that Mr. Fluker "has excellent strength and is extremely well developed [with] large triceps, deltoids, and pectorals major/minor . . . biceps is well developed except for slight depression of distal 1/3 . . . [patient] alleges pain but is non-descript . . . ."  (*See id.*) (emphasis omitted).

In response to Mr. Fluker's continuing concern about his left biceps tendon, on October 27, 2004 he was placed on the list to see the orthopedic specialist via tele-ortho.  (*See* doc. # 98-2 at pp. 74-75 of 134).  A tele-ortho consultation was held on January 31, 2005 with Dr. Vikas Patel, M.D.  (*See* doc. # 98-2 at pp. 76, 124, 126 of 134).  Dr. Patel noted that while Mr. Fluker "does have notable asymmetry of his left biceps with apparent retraction of a portion of the biceps muscle," he "has full range of motion of his left upper extremity, . . . [h]is strength of both flexion as well as extension, internal and external rotation and abduction is all 5/5 strength and most notably his biceps strength appears to be quite good in that left upper extremity."  (*See id.* at p. 126

of 134).  Dr. Patel noted

> Mr. Fluker appears to have had a biceps tendon rupture in the past.  This has likely affected only one head of the biceps or one portion of the biceps as he continues to have pretty good supination strength as well as flexion strength in the left upper extremity.  I do not feel that this is something that can be treated surgically as at this point the muscle has retracted nearly completely and there is no possibility of reconstructing it.  Also, there would be significant atrophy of that portion of the biceps muscle and thus, even if it were theoretically possible to repair the tendon, the muscle would not be functional.  Therefore, I would not recommend surgery at this time. I would recommend that he continue to exercise both upper extremities as tolerated and I anticipate that he should have gradual resolution of any residual discomfort. Otherwise other sources of pain should be considered down the road if he does not have improvement in his comfort.

(*See* doc. # 98-2 at p. 126 of 134).

During an examination on September 11, 2006, Mr. Fluker requested a biceps tendon rupture evaluation.  (*See* doc. # 98-2 at p. 77 of 134).  Mr. Fluker requested referral to an orthopedist for a cadaver tendon transplant.  (*See id.*).  Dr. Nafziger noted that Mr. Fluker worked out heavily, lifting books in a pillow case to strengthen his biceps, had a large portion of the biceps intact, his strength was 5/5 in the left biceps, and he had minimal signs of atrophy in the left forearm.  (*See id.*).  Dr. Nafziger instructed Mr. Fluker to decrease his workouts if it was causing pain and denied the request for referral to an orthopedist for a cadaver tendon transplant.  (*See id.* at p. 78 of 134).  Mr. Fluker continued to seek further consultation "with an orthopedic surgeon for surgical repair of his bicep tendon."  (*See id.* at p. 80 of 134).

Mr. Fluker fails to demonstrate that Defendants were deliberately indifferent to his medical needs regarding his biceps tendon.  The undisputed facts show that Mr. Fluker has received extensive continuous evaluation of his condition since 1998.  He was scheduled for surgery in 1998 but declined to proceed.  Thereafter he was

16

evaluated on many occasions and consulted with numerous orthopedic specialists.  No physician has indicated that the surgery Mr. Fluker seeks is necessary or advised.  Mr. Fluker has good use of his left arm and takes pain medication (ibuprofen) only occasionally.  The evidence shows that the elective surgery Mr. Fluker seeks is not medically indicated or necessary and that his biceps tendon does not require further medical evaluation.

Mr. Fluker's Claim One constitutes no more than his subjective desire for further medical evaluation and reconstructive surgery.  (*See, e.g.*, doc. # 98-1 at p. 38 of 67 ("I was trying to find someone that could convince me that the surgery would be a success and they know what they are doing.")).  Mr. Fluker has failed to offer any expert medical evidence that the surgery he desires is necessary.  Mr. Fluker concedes he has been counseled by medical professionals that surgery "could be more damaging than good." (*See* doc. # 98-1 at p. 16 of 67; *see also* doc. # 103-1 at p. 4 of 4).  Mr. Fluker concedes that he has had no medical training and that he has learned about medical issues from watching T.V. and reading the newspaper and the Merck Manual.   (*See* doc. # 98-1 at pp. 9-10).

Mr. Fluker demonstrates nothing more than his disagreement with the ongoing diagnosis and recommended course of treatment for his biceps tendon.  (*See, e.g.*, doc. # 98-1 at p. 44 of 67 ("I disagree with it")).  This is not sufficient to sustain a claim under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (whether a certain form of treatment should be prescribed "is a classic example of a matter for medical judgment"); *Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate

indifference to serious medical needs");  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment");  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation).  Based on the lack of any medical evidence that reconstructive surgery is indicated for his biceps tendon, Mr. Fluker has not established that Defendants have been deliberately indifferent to his medical needs.

2.    Claim Two

In his Claim Two, Mr. Fluker alleges that the BOP has violated its administrative grievance procedures by improperly denying his "request for review by other federal agencies . . . concerning kitchen employees reprisal and officer reprisal who continue to intentionally serve Plaintiff Fluker, spoil [sic] nutritionally inadequate foods and foods that are being laced with drugs and other substances."  (*See* doc. # 65 at p. 12 of 61, ¶ 8).  Claim Two also alleges that the BOP was improperly denying his "request to receive Hylexin and Milexin MD medical creams to lighten dark circles under my eyes pursuant to Title 18 U.S.C. 4042 Duties of Bureau of Prisons (A)(2)."  (*See id.* at p. 13 of 61, ¶ 10).  Mr. Fluker seeks injunctive and mandamus relief in the form of "a gas chromatography-mass spectrometry test and a qualitative blood test," "to determine what exactly is making me sick. . . ."  (*See* doc. # 65 at p. 13 of 61, ¶ 9; doc. # 98-1 at pp. 5-6).

Only a substantial deprivation of food may state a claim for unconstitutional prison conditions.  *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002).

Prisoners do not have a right to hot meals. *Waring v. Meachum*, 175 F. Supp. 2d 230, 239-40 (D. Conn. 2001); *Sawyer v. Jeffries*, 315 Fed. Appx. 31, 35 (10th Cir. 2008) ("while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, . . . there is no constitutional right to hot meals.") (internal quotation marks and citations omitted). (*See* doc. # 98-1 at p. 53 of 67 ("We don't get a full hot meal at dinner anymore. The only hot meals we get are breakfast and lunch. And dinner's just a sandwich.")).

Mr. Fluker has periodically made allegations that ADX staff were poisoning his food. (*See, e.g.,* doc. # 98-2 at pp. 26, 30, 35, 42, 46, 52, 55, 73, 75, of 134). When Mr. Fluker complained to ADX medical staff of being poisoned, he was examined and tested, with no resulting evidence to substantiate his complaints. During his two stays MCFP Springfield, Mr. Fluker had blood and other tests, all of which results were negative. (*See, e.g.,* doc. # 98-2 at p. 26 of 134 (Complete Blood Count ("CBC"), drug abuse screen, comprehensive drug screen, and heavy metal toxicology screen performed); p. 30 of 134 (results hair and nail samples collected to rule out arsenic poisoning were unremarkable); *see also* pp. 105-06, 117-20 of 134).

There is no objective evidence before the court that Mr. Fluker has been poisoned or that the food he receives is nutritionally inadequate. Toxicology test results were negative for any drugs and other substances. Mr. Fluker has never identified any specific substance or change in the color, texture, or flavor, etc. of his food. (*See, e.g.*, doc. # 98-1 at p. 54 of 67 ("Well, to be honest with you, I never saw anything over there; it's just when I tasted it, I would experience symptoms. You can't see it; but once you taste it, you know they got you."). (*See also* doc. # 98-2 at p. 118 of 134) ("[W]hen

confronted as to whether he really believed that there was alteration of his food tray, he rather sheepishly acknowledged that these events probably were not occurring.").

Mr. Fluker offers no medical or expert witness to support his allegations that the food he is served is not adequately nutritious or causing him to suffer health problems. Mr. Fluker has not alleged any specific date on which he received inadequate food. Mr. Fluker concedes that he is not a dietician and does not "have that kind of knowledge to determine a balanced diet for all these men." (*See* doc. # 98-1 at p. 60 of 67). Mr. Fluker has not alleged any specific conduct by any of the named Defendants regarding serving him inadequate food.

Mr. Fluker has been incarcerated at USP-Florence since April 14, 2009. (*See* doc. # 98-1 at p. 47). Since arriving at the USP from the ADX, Mr. Fluker has experienced only one incident where he believed there was a problem with his food. (*See id.* at pp. 47-48). After complaining about the alleged incident, Mr. Fluker has had no further problems with the food at the USP. Id., pp. 56-57. Mr. Fluker also buys a variety of food items at the commissary, including "rice, soups, kipper snacks, oysters, clams." (*See* doc. # 98-1 at p. 55 of 67; *see also* doc. # 98-3).

Mr. Fluker has not demonstrated that he has been deprived of nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to his health and well being. *See Ramos*, 639 F.2d at 570-71. The evidence before the court fails to demonstrate that Mr. Fluker has received "nutritionally inadequate foods and foods that are being laced with drugs and other substances," much less that Defendants were deliberately indifferent to Mr. Fluker's right to adequate food. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (Eighth Amendment imposes

duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care . . .").

To the extent that Claim Two purports to assert a claim against Defendants for failing to grant Mr. Fluker's request to have his grievances reviewed by other federal agencies, Mr. Fluker cannot maintain a constitutional claim based on his perception that his grievance was not properly processed or investigated, that the grievance process is inadequate, or that his grievance was denied. *See Hassett v. Correctional Medical Services*, 2008 WL 4889323, *3 (D. Del. 2008) (dismissing plaintiff's claims). *See also Sharpe v. Patton*, 2009 WL 111634, *2 (E.D. Ky. 2009) (holding there is no inherent constitutional right to an effective prison grievance procedure); *Hart v. Whalen*, 2008 WL 4107651, *16-17 (M.D. Pa. 2008) (dismissing a federal inmate's claim that supervisory employees of the BOP had failed to properly respond to his appeals of his grievances; "even if the prison provides for a grievance procedures, as the BOP does, violations of those procedures do not amount to a civil rights cause of action").

3.      The APA

This court's jurisdiction can be based on the federal question statute, 28 U.S.C. § 1331, "only if there is some other statute waiving sovereign immunity." *Id.* The APA, which provides a means for judicial review of final agency actions, provides a limited waiver of the United States' sovereign immunity. *See* 5 U.S.C. § 702; *City of Albuquerque v. U.S. Dept. of Interior*, 379 F.3d 901, 907 (10th Cir. 2004) ("the [Administrative Procedure Act] is not to be interpreted as an implied grant of subject matter jurisdiction to review agency actions") (internal quotation marks and citation

omitted).  The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Where no other statute provides a private right of action, the "agency action" complained of must be "final agency action."  5 U.S.C. § 704.  Mandamus relief under the APA, 5 U.S.C. § 706(1), is limited to discrete action that an agency is required to take.  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) "[T]he only agency action that can be compelled under the APA is action legally *required*.") (emphasis in original).  "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton*, 542 U.S. at 64.

Here, Mr. Fluker's claims are not cognizable under the APA because he does not identify any final agency action by which he was aggrieved and for which he would be entitled to review.  *See Tsegay v. Ashcroft*, 386 F.3d 1347, 1354 (10th Cir. 2004) ("To be subject to review under the APA, the action at issue must be a 'final agency action.'");  5 U.S.C. § 704.  Neither does Mr. Fluker assert that the United States failed to take a discrete action that it is required to take.  *See* 5 U.S.C. § 706(1).  Mr. Fluker seeks affirmative relief in the form of additional medical consultation and surgery to repair his left biceps tendon and "a gas chromatography-mass spectrometry test and a qualitative blood test."[5]  Nor is this case like *Simmat*, where the inmate's claim was "not

---

[5]     To the extent that Claim Two also alleges that the BOP was improperly denying Mr. Fluker's "request to receive Hylexin and Milexin MD medical creams to lighten dark circles under my eyes pursuant to Title 18 U.S.C. 4042 Duties of Bureau of Prisons (A)(2)" (*see* doc. # 60 at p. 13 of 61, ¶ 10), Mr. Fluker has presented no evidence to support such a claim.  Nor has Mr. Fluker shown any agency action that the agency was required to take or any final agency action by which he was aggrieved and

one to control or override the discretion of the prison [health care providers], but simply to be examined."  413 F. 3d at 1235-36.

4.      Mandamus Act

Pursuant to 28 U.S.C. § 1361, district courts have original jurisdiction in the nature of mandamus to compel an agency or officer to perform a duty owed to the plaintiff.  *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007) ("application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity") (internal quotation marks and citation omitted).  *See also* §1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

Grant of mandamus relief is a matter of judicial discretion, but a plaintiff must first show eligibility by establishing "(1) that he has a clear right to relief, (2) that the [defendant's] duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy."  *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005).  The action requested must be a nondiscretionary, ministerial duty. *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991).  "[M]andamus is an extraordinary remedy that is granted only in the exercise of sound discretion." *Miller v. French*, 530 U.S. 327, 339 (2000) (internal quotation marks and citation omitted).  For mandamus to issue, "[p]etitioner must also show that his right to the writ is 'clear and

_____

for which he would be entitled to review.

indisputable.'" *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990).

As to Mr. Fluker's Claim One, he has not demonstrated that Defendants have breached a non-discretionary duty to provide him medical care. Thus, he has not met his burden to show that he has a clear right to relief or that Defendants have a clear duty to provide him with the requested medical consultation and surgery.

As to Mr. Fluker's Claim Two, he has failed to show that he is entitled to relief concerning the food he is served at USP-Florence, where he is currently incarcerated. The evidence shows that Mr. Fluker receives three meals a day, deemed nutritionally adequate by a dietician, and buys additional food items at the prison commissary. (*See* doc. # 98-1 at p. 55 of 67; doc. # 98-2 at p. 14 of 134, ¶ 43). Moreover, in order to be entitled to injunctive relief, the injury must be of a continuing nature. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) ("plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future"); *F.E.R. v. Valdez*, 58 F.3d 1530, 1534 (10th Cir. 1995) ("To establish standing [for injunctive relief] the [plaintiffs] must demonstrate a sufficient likelihood that they will again be harmed in a similar manner."). On the undisputed facts here, Mr. Fluker has not demonstrated any continuing problem with the food since he has been incarcerated at USP-Florence. Mr. Fluker has not shown that he has a clear right to the relief he seeks in the form of additional testing and more nutritious food. As Mr. Fluker has not met his heavy burden for mandamus relief, his claim is properly denied.

C.     Mr. Fluker's ". . . Motion for the Court Assistance to Investigate . . ."

Mr. Fluker asks "this court for assistance to investigate the defendant Federal Bureau of Prison's employee for 'altering documents in a[n] official proceeding pursuant to Title 18 U.S.C. § 1512 . . . ."  Title 18 U.S.C. § 1512 is a federal criminal statute entitle "Tampering with a witness, victim, or an informant."  .

First, as a private citizen, Mr. Fluker has "no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009).  Second, "[p]rosecutorial discretion resides in the executive, not in the judicial, branch. . . ." *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir. 1992).  "[T]he courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965).  "A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them." *Giannattasio*, 979 F.2d at 100.  The Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case and what charge to file or bring.

The court accepts Mr. Fluker's representation that, in the letter dated June 27, 2008 he received from the BOP (*see* doc. # 103 at p. 6 of 6), "[t]he letter y, was deleted on the word healthy" and "[t]he word not was deleted after does."  The court declines to take any further action regarding Mr. Fluker's Motion.

Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (filed December 7, 2009) (doc. # 98) be GRANTED and that summary judgment be entered on the Second Amended Complaint (doc. # 65) in favor of Defendants and against Plaintiff.

Further, IT IS ORDERED that:

1.     "Plaintiff Fluker['s] Motion to Provide the Court with Amendments to Deposition" (filed December 21, 2009) (doc. # 101) is GRANTED.

2.     Mr. Fluker's "Unopposed Motion for the Court Assistance to Investigate the Defendant Federal Bureau of Prison[s'] Employees for Altering Documents in a Official Proceedings Pursuant to Title 18 U.S.C. § 1512 Alter Documents in a Official Proceeding (c) and D.C. Colo. L. Civ. R. 7.1 Motion (A) [sic]" (filed December 28, 2009) (doc. # 103) is DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate

review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      DATED at Denver, Colorado this 25th day of May, 2010.

                            BY THE COURT:


                              s/ Craig B. Shaffer
                            United States Magistrate Judge